# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STEVEN ADDLESPURGER**, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **TOM CORBETT**, Pennsylvania State ) <br> Attorney General in his official and ) <br> Individual capacities; **STEPHEN** ) <br> **ZAPPALLA**, Allegheny County District ) <br> Attorney in his official and individual ) <br> Capacities; **DONNA JO McDANIEL**, ) <br> President Judge Allegheny County Fifth ) <br> Judicial District in her professional and ) <br> individual capacities; **RAYMOND** ) <br> **BILLOTTE**, Administration of ) <br> Pennsylvania Courts Fifth Judicial District ) <br> in his official and individual capacities; ) <br> **KIM BERKELY CLARK**, Administrative ) <br> Judge in her professional and individual ) <br> Capacities; **PATRICK QUINN**, Domestic ) <br> Relations Services in his official and ) <br> individual capacities; **DAVID WECHT**, ) <br> Judge in his official and individual ) <br> Capacities; **WILLIAM MULLEN**, Sheriff ) <br> in his official and individual capacities; ) <br> **DAN ONORATO**, Chief Executive of ) <br> Allegheny County and in his official and ) <br> individual capacities; **RAMON RUSTIN**, ) <br> Jail Warden in his official and individual ) <br> capacities; **DANIEL RICHARDS**, ) <br> Department of Public Welfare in his ) <br> official and individual capacities; ) <br> **MICHAEL WOJCIK**, County Solicitor ) <br> in his official and individual capacities; ) <br> and **KATE BARKMAN,** Department of ) <br> Court Records in her professional and ) <br> individual capacities, ) <br> ) <br> Defendants. ) | 2:09cv1064 <br> Electronic Filing |

**MEMORANDUM OPINION**

Proceeding *pro se*, Steven Addlespurger ("plaintiff") filed his initial complaint on August 12, 2009. The action was assigned to Magistrate Judge Mitchell who treated it as a second or successive habeas petition. Plaintiff appealed. By order of the Honorable Maryanne Trump Barry of the United States Court of Appeals for the Third Circuit, the action was remanded with direction to consider the complaint as an attempt to commence a civil rights action under 42 U.S.C. § 1983 for injunctive relief based on alleged ongoing due process violations in proceedings before the Allegheny County Court of Common Pleas. Certified Order of Dec. 18, 2009 (Doc. No. 7), at 2.

Plaintiff's complaint was founded on prior civil proceedings in the Family Division of the Court of Common Pleas. Plaintiff's former spouse initiated divorce proceedings against him at No. FD04-004718. Based on a number of purported events in those proceedings plaintiff sought punitive damages for "Policy Making Defendants, the County of Allegheny, Family Division DRS Domestic Relations Services et.al, and the Fifth Judicial District." (sic)

On December 30, 2010, plaintiff filed an Amended Complaint in which he named thirteen defendants. He claims these defendants, acting under the color of the law, violated his constitutional rights by taking and imprisoning him eleven times pursuant to child support and contempt orders. Amended Complaint (Doc. No. 12) at 107. Plaintiff asserts that these actions violated his First, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendment rights.[1] He now seeks an award of compensatory damages to be determined by a "jury and/or the court." Id. at 61.

Plaintiff's Amended Complaint is prolix and contains numerous pages of assertions that appear to be grounded on nothing more than conjecture and plaintiff's speculative theories about

---

[1] Plaintiff also claims his Thirteenth Amendment rights were violated. Plaintiff fails to set forth an equal protection claim under § 1983 presumably because he cannot claim to be a member of any protected racial class.

2

defendants' motivations. More specifically, plaintiff asserts that in the proceedings he was denied due process, a fair hearing, and equal protection. He lists ten counts against all thirteen named defendants:

1. False Arrest and Imprisonment
2. Detention and Confinement
3. Strip Search
4. Conspiracy
5. Refusing or Neglecting to Prevent
6. Malicious Prosecution
7. Malicious Abuse of Process
8. Assault and Battery
9. Intentional Infliction of Emotional Distress
10. Wire Fraud and Mail Fraud.

Am. Compl. at 2. Presently before the court are motions to dismiss by all defendants. For the reasons set forth below, the motions will be granted.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. Id. at 544. In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, – U.S. –, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

3

Id. In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are merely consistent with a defendant's liability. Id. Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)); accord Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed.1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."); Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Phillips, 515 F.3d at 235; see also Wilkerson v. New Media

Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

It also is well settled that pleadings filed by *pro se* litigants are to be construed liberally. McNeil v. United States, 508 U.S. 106, 113 (1993); Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002). And in such circumstances the court has an obligation to "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." Higgins, 293 F.3d at 688 (quoting Holley v. Dept. of Veterans Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)).

But the above-referenced standards are not to be read as a license to excuse or overlook procedural shortcomings in pleadings submitted by those who choose to represent themselves. McNeil, 508 U.S. at 113 ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"). Thus, a complaint drafted without the benefit of counsel nevertheless must comply with Federal Rule of Civil Procedure 8(a). And, while Fed. R. Civ. P. 8(a)(2) requires only a "short and plain statement of the claims showing that the pleader is entitled to relief," Rule 12(b)(6) is not without meaning. Krantz v. Prudential Investments Fund Management, 305 F.3d 140, 142 (3d Cir. 2002). It follows that in order to comply with the applicable pleading standards "more detail is often required than the bald statement by plaintiff that he has a valid claim of some type against defendant." Id. at 142 - 43 (quoting Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1357 at 318 (2d ed. 1990)). This principle appears to be even more well-grounded after Twombly.

**Plaintiff's § 1983 Claim**

A § 1983 claim provides a vehicle for vindicating a violation of federal rights. Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). A cause of action under §1983 has two elements: a plaintiff must prove (1) a violation of a right, privilege or immunity secured by the constitution or laws of the United States (2) that was committed by a person acting under color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996); Kelly v. Borough of Sayreville, 107 F.3d 1073, 1077 (3d Cir. 1997); Berg v. Cty. of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000) ("The Plaintiff must demonstrate that a person acting under color of law deprived him of a federal right.") (citing Groman, 47 F.3d at 633)).

It is undisputed that the thirteen defendants were acting under color of law, as Plaintiff originally sued each defendant in his or her official capacity. Defendants do not challenge the implied contention that they were acting under color of state law. Accordingly, this element is not at issue.

In order to establish that a defendant violated a constitutional right, "the exact contours of the underlying right said to have been violated" must be determined. Berg, 219 F.3d at 268 (citing City of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998)). As previously noted, plaintiff asserts that defendants violated his First, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendment rights. He nevertheless fails to set forth any detailed factual context from which to determine the "exact contours" of the rights he claims to have been violated. As a result the court will give plaintiff the most favorable reading possible in light of his *pro se* status and proceed with the issues raised in defendants' motions.

**Failure to Substantively State a Claim 12(b)(6)**

After all reasonable inferences are drawn in plaintiff's favor, the Amended Complaint as augmented by plaintiff's response to defendants' Motions to Dismiss readily fails to state a claim

at the following counts: Count 3 – Strip Search, Count 4 – Conspiracy, Count 5 – Refusing or Neglecting to Prevent, and Count 10 – Wire Fraud and Mail Fraud. [2]

At Count 3, plaintiff claims that Allegheny County Jail officers violated his constitutional rights by subjecting him to illegal strip searches.[3] Recently the Third Circuit upheld the constitutionality of strip searches for all arrestees upon their admission into the general prison population. Florence v. Board of Chosen Freeholders of County of Burlington, 621 F.3d 296, 308 (3d Cir. 2010). Therefore, plaintiff fails to state a claim upon which relief can be granted at Count 3 and this count must be dismissed.

At Count 4, plaintiff purportedly advances a conspiracy claim under Title 18 of the United States Code. It is well-established that there is no private cause of action for claims of conspiracy under 18 U.S.C. §§ 241 and 242. See, e.g., United States v. Philadelphia, 644 F.2d 187, 198-99 (3d Cir.1980) ("We conclude that the first three factors articulated in Cort v. Ash weigh heavily against the argument that when it enacted §§ 241 and 242 Congress by implication authorized the Attorney General to sue for injunctions against widespread violations of constitutional rights."). Consequently, this claim is without merit and must be dismissed.

At Count 5, plaintiff alleges that defendants Zappala and Corbett as well as Allegheny County took action against him in "Retaliation for Exercise of Civil Rights" in violation of 18 U.S.C. § 1513 by failing to "instruct, supervise, control and discipline" defendants Wecht and Quinn. Once again, there is no private cause of action available under 18 U.S.C. § 1513. See Shahin v. Darling, 606 F. Supp.2d 525, 539 (D. Del. 2009) ("Section 1513 is the criminal statute

---

[2] Each of these counts are brought against all defendants.
[3] On January 14, 2011, plaintiff filed a notice indicating that he opted out of Delandro, et al. v. County of Allegheny, a class action concerning the legality of strip searches at the Allegheny County Jail. Plaintiff asserts it is in his best interest to include this claim as opposed to relying on Delandro. Plaintiff argues that the individual defendants "continued to propagate an illegal strip search policy" at the Jail. Delandro subsequently settled out of court.

for retaliation against a witness, victim, or an informant. A private right of action is not recognized under this criminal statute."). Therefore, this count likewise must be dismissed.

At Count 10, plaintiff alleges wire and mail fraud against defendants Mullen, Wecht, Quinn, Wojcik, Richards, Rustin, and Clark. There is no private federal claim for wire or mail fraud. See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 501 (1985) ("The wire fraud act, 18 U.S.C. § 1343, is closely analogous to the mail fraud statute, 18 U.S.C. § 1341, and likewise evidences no intent of Congress to grant additional federal question jurisdiction in civil cases."). Various circuit courts consistently have held that "no implied federal private causes of action accrue to victims of these federal violations." Sedima, 473 U.S. at 501 (J. Marshall, dissenting) (citing Ryan v. Ohio Edison Co., 611 F.2d 1170, 1178-1179 (6th Cir. 1979) (mail fraud); Napper v. Anderson, 500 F.2d 634, 636 (5th Cir. 1974) (wire fraud), cert. denied, 423 U.S. 837 (1975)). As there is no private cause of action for mail and wire fraud, plaintiff cannot state a claim upon which relief can be granted at Count 10. Consequently, this count likewise must be dismissed.

**Judicial Defendants & Judicial Immunity**

Defendants McDaniel, Billotte, Clark, Quinn, and Wecht ("the judicial defendants") invoke judicial immunity. Immunity from suit applies to judicial officers in the performance of their official duties, thereby relieving them from liability for judicial acts. Azubuko v. Royal, 443 F.3d 302, 303 (3d Cir. 2006) (citing Mireles v. Waco, 502 U.S. 9 (1991)). Furthermore, a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Azubuko, 443 F.3d at 303 (citing Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)).

Plaintiff's claims are all founded on orders entered against him in the Family Court proceedings. As plaintiff's claims against the judicial defendants are based on the performance

8

of their duties, the judicial defendants clearly are entitled to judicial immunity on all claims advanced against them. As a result, all claims against the judicial defendants must be dismissed.

**State Defendants and immunity**

Plaintiff asserts claims against defendants Corbett and Richards ("the state defendants") in their official and individual capacities as agents of the state. The state defendants invoke Eleventh Amendment immunity.

Suits against the state are barred by the Eleventh Amendment.[4] Alabama v. Pugh, 438 U.S. 781, 781-82 (1978). Eleventh Amendment immunity applies to suits regardless of the relief sought. In re Kish, 212 B.R. 808, 814 (Bkrtcy D. N.J. 1997) ("the 'jurisdictional bar [of the Eleventh Amendment] applies regardless of the relief sought'") (citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100–01 (1984)); see also Cory v. White, 457 U.S. 85, 90, (1982) ("It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the state itself simply because no money judgment is sought.").

The Supreme Court has held that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 n. 55 (1978)). Suits against a state agency or a state department thus are considered to be suits against a state which are barred by the Eleventh Amendment. In re Kish, 221 B.R. 118, 124-25 (Bkrtcy. D. N.J. 1998) (quoting Geis v. Board of Educ. of Parsippany–Troy Hills, Morris Cnty., 774 F.2d 575, 580 (3d Cir.1985)); accord Hafer v. Melo, 502 U.S. 21, 25 (1991). In other words, suits against state officials for acts taken in their official capacity must be treated as suits against the state. Hafer, 502 U.S. at 25.

---

[4] The Eleventh Amendment "enacts a sovereign immunity from suit, rather than a nonwaivable limit on the federal judiciary's subject-matter jurisdiction." Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997).

9

The state defendants are appointed or elected employees of the Commonwealth of Pennsylvania. Defendant Richards is an "arm of the state" as he is a director within the Pennsylvania Department of Public Welfare. Defendant Corbett's prior position as Attorney General of Pennsylvania is an elected position. All actions of the state defendants identified by plaintiff were within the performance of the state defendants' official duties. As they enjoy the immunity conferred by the Eleventh Amendment, plaintiff's claims against them must be dismissed.

Additionally, plaintiff makes claims against the state defendants based on the doctrine of *respondeat superior*. The Third Circuit has held that a "defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)); but see Perano v. Arbaugh, 2011 WL 1103885, *7 (E.D. Pa. March 25, 2011) ("In light of the United States Supreme Court's decision in Iqbal, . . . which rejected the theory that a supervisor could be liable based on knowledge of, and acquiescence in, his subordinate's acts, courts have questioned whether the "knowledge and acquiescence" standard set out in Rode remains good law.") (citing Bayer v. Monroe County Children & Youth Services, 577 F.3d 186, 191 n. 5 (3d Cir.2009); Ramos–Vazquez v. Primecare Medical, Inc., 2010 U.S. Dist. LEXIS 105867, at *37–39, 2010 WL 3855546 (E.D. Pa. Sept. 30, 2010) (Rufe, J.)).

Plaintiff makes no allegations of personal involvement by defendants Corbett and Richards in the alleged violation of his rights. Although plaintiff indicates that the state defendants were made aware of the misconduct and violation of his rights, see Plaintiff's Response at 7, he does not allege that these defendants personally were involved in any

10

constitutional violations. Plaintiff also does not allege that the state defendants had actual knowledge of the alleged violation. Given their positions and the nature of the conduct upon which plaintiff's Amended Complaint is founded, it is not reasonable to assume that they would have such knowledge, let alone the ability to control or influence the situation in any way. As a result, the claims against the state defendants must be dismissed.

**Zappala & Prosecutorial Immunity**

Plaintiff's claims against defendant Zappala are for actions he took as District Attorney for Allegheny County. Prosecutors have immunity from damages in § 1983 claims. Fuchs v. Mercer County, 2006 WL 2642408 *2 (W.D. Pa. September 13, 2006) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976) and Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992)). A state prosecuting attorney, acting within the scope of his or her duties as a prosecutor, has absolute immunity from civil suit. Imbler, 424 U.S. at 428.

Here, Zappala's involvement in plaintiff's proceedings is limited to the positions he took in his prosecutorial role. Therefore, he sufficiently has invoked prosecutorial immunity and all of plaintiff's claims against him must be dismissed.

**County Defendants**

Defendants Onorato, Rustin, Wojcik, and Barkman ("the county defendants") are sued in their official and individual capacities. Beyond unsupported assertions of broad-based criminal conduct and theft of public services, plaintiff does not allege specific conduct by these individuals that deprived him of his constitutional rights.

The protections of judicial immunity extend to those who perform "quasi-judicial" functions. Gallas v. Supreme Court of Pa., 211 F.3d 760, 772-73 (3d Cir. 2000) (citing Forrester v. White, 484 U.S. 219, 225 (1988) (the protections of judicial immunity extend to officials "who perform quasi-judicial functions"); Moore v. Brewster, 96 F.3d 1240, 1244 (9th Cir.1996)

("[Defendant], while acting as Clerk of the United States District Court ... in many of his actions performed quasi-judicial functions.... Even if ... [defendant] deceived [plaintiff] regarding the status of the [supersedeas] bond and improperly conducted hearings to assess costs, all in coordination with Judge Brewster, such acts would fall within [the defendant's] quasi-judicial duties and are thus protected by absolute immunity."); McArdle v. Tronetti, 961 F.2d 1083, 1085 (3d Cir.1992) (holding that a prison physician who prepared an evaluation of an inmate pursuant to a judge's request was "functioning as an arm of the court" and "[a]s such, he was an integral part of the judicial process and is protected by the same absolute judicial immunity that protects Judge Connelly"); Dellenbach v. Letsinger, 889 F.2d 755, 763 (7th Cir.1989) ( "[W]e conclude on the facts before us that the court personnel are entitled to absolute quasi-judicial immunity for their alleged acts [undertaken] pursuant to the judge's instructions.").

In Lepre v. Tolerico, the Third Circuit ruled that Lackawanna County officials were entitled to quasi-judicial immunity because they acted pursuant to a valid bench warrant issued in a child support arrearage proceeding. 156 Fed. Appx. 522, 525 (3d Cir. 2005); see also Waits v. McGowan, 516 F.2d 203, 206-07 (3d Cir. 1975) (same). In other words, ". . . where the defendant is directly involved in the judicial process, he may receive immunity in his own right for the performance of a discretionary act or he may be covered by the immunity afforded the judge because he is performing a ministerial function at the direction of the judge." Waits, 516 F.2d at 206.

All of the identified county defendants' actions were undertaken pursuant to Judge Wecht's orders. Consequently, the Amended Complaint fails to state a claim that can overcome the quasi-judicial immunity that inures to these defendants under the circumstances.

Plaintiff asserts that the county defendants are liable under the doctrine of *respondeat superior*. Again, plaintiff must be able to allege that these defendants had personal involvement

in a viable wrongdoing. Rode, 845 F.2d at 1207 (3d Cir. 1998) (citing Parratt v. Taylor, 451 U.S. 527, 537 n. 3 (1981) and Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976)). This plaintiff cannot do.

**Defendant Mullen**

Defendant Mullen ("Mullen") is sued in his official and individual capacity. Mullen invokes qualified immunity.

Plaintiff alleges that Mullen denied him access to the court "[and] Sheriff Best, deputy Scott McCarthy and Anthony Fratto are relevant as to be witnesses/defendants thereof; the actions by a so called court order." Am. Compl. at ¶ 67. Plaintiff also alleges that he was arrested in court. (Id. at ¶ 127). Plaintiff further asserts that "a postal interception occurred" and that a "Sheriff employee conspired to 'effectuate the complaint.'" Am. Compl. at ¶¶ 68, 213, 270(k), 271. There are no allegations of Mullen's personal involvement in the asserted violations of plaintiff's rights.

Plaintiff fails to state a claim against Mullen. Mullen's involvement is based on the actions of his deputies who arrested Plaintiff and transported him to and from the courtroom and the Allegheny County Jail pursuant to Judge Wecht's orders. Mullen is an elected officer with duties that include maintaining peace in the courtroom, transferring prisoners, enforcing bench warrants and serving process. In all of these functions he is an arm of the judicial branch. Venneri v. Cnty of Allegheny, 316 A.2d 120 (Pa. Commw. 1974) ("A sheriff's principal function is as an arm of the court.") (quoting Kopko v. Miller, 842 A.2d 1028, 1039 (Pa. Commw. 2004) and collecting in support Cambria Cnty Sheriff's Ass'n v. Pennsylvania Labor Relations Bd., 799 A.2d 957 (Pa. Commw. 2002); Allegheny County Deputy Sheriff's Ass'n v. Pennsylvania Labor Relations Bd., 504 A.2d 437 (Pa. Commw. 1986); Venneri v. County of Allegheny, 316 A.2d

120 (Pa. Commw. 1974)). Because Mullen's conduct is limited to performing administrative functions as part of the judicial branch he is entitled to quasi-judicial immunity.

**Remaining Counts**

The remaining Counts of the Amended Complaint also must be dismissed because they too fail to state a claim upon which relief can be granted.

At Counts 1 and 2 plaintiff alleges that he was subjected to false and unlawful arrest, imprisonment, detention, and confinement in violation of the Fourth Amendment. The elements of false arrest include: 1) an arrest made without probable cause or 2) one made by someone without privilege to arrest. Brockington v. City of Philadelphia, 354 F. Supp.2d 563, 572 (E.D. Pa. 2005).

Plaintiff cannot plead that his arrests were made without probable cause as all were done pursuant to Judge Wecht's orders/ bench warrants, nor can he allege that his arrests were made by someone without privilege to do so as all were done by those empowered to execute the orders/warrants. It follows that the claim of false arrest must be dismissed.

Plaintiff's incarcerations constitute seizures under the Fourth Amendment. The Fourth Amendment protects the right "to be secure against unreasonable seizures." Id. at 269. An analysis of a Fourth Amendment claim is guided by a three-step inquiry: whether there was a seizure within the meaning of the Fourth Amendment; whether any such seizure was reasonable; and, if not, whether the defendant can be found liable for the unreasonable seizure. Id.

Here, Judge Wecht found plaintiff to be in contempt as a result of his failure to make child support payments and ordered him to be imprisoned eleven times. Thus, there was a seizure governed by the Fourth Amendment. Nevertheless, all of the seizures were reasonable because they were performed pursuant to valid judicial orders rendered after appropriate process. Furthermore, all defendants are entitled to judicial or quasi-judicial immunity as their actions

flowed directly from and merely carried out Judge Wecht's orders.  Plaintiff has failed to identify any factual grounds to support a contrary inference or conclusion.  Accordingly, the claims of unlawful detention, confinement, and imprisonment must be dismissed.

At Counts 6 and 7 Plaintiff pleads malicious prosecution and malicious abuse of process. In order to sustain a cause of action for malicious prosecution relating to a criminal prosecution, the plaintiff must prove the defendant (1) instituted proceedings against the plaintiff; (2) without probable cause; (3) with malice, and (4) that the proceedings were terminated in favor of the plaintiff.  Corrigan v. Central Tax Bureau of Pa. Inc., 828 A.2d 502, 505 (Pa. Commw. 2003); Miller v. Pennsylvania, 89 A.2d 809, 811 (Pa. 1952) (previous criminal proceeding must have been unsuccessful for recovery); Electronic Laboratory Supply Co. v. Cullen, 712 A.2d 304, 311 (Pa. Super. 1998) (same).

The tort of malicious abuse of civil process is separate and distinct from malicious prosecution.  Werner v. J.Plater-Zyberk, 799 A.2d 776, 785 (Pa. Super 2002).  Malicious use of civil process provides a remedy for the wrongful initiation of civil process.  U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 394 (3d Cir. 2002).  This tort arises when a party initiates a lawsuit with a malicious motive that is lacking in probable cause.  Hart v. O'Malley, 781 A.2d 1211, 1219 (Pa. Super. 2001).  In contrast, an abuse of process claim is founded on an alleged perversion of legal process after litigation has been initiated.  U.S. Express Lines, Ltd., 281 F.3d at 394; Werner, 799 A.2d at 787.  "Abuse of process is defined as 'the use of legal process against another primarily to accomplish a purpose for which it is not designed.'"  Id.  It is intended to provide redress where legal process is used as a tactical weapon to coerce a desired result that is not the legitimate object of the process.  McGee v. Feege, 535 A.2d 1020, 1026 (Pa. 1987); accord Shiner v. Moriarty, 706 A.2d 1228, 1236 (Pa. Super. 1998) ("The tort of 'abuse of process' is defined as the use of legal process against another 'primarily to accomplish a purpose

15

for which it is not designed.'") (quoting <u>Rosen v. American Bank of Rolla</u>, 627 A.2d 190, 192 (Pa. Super. 1993)).

Moreover, "[t]he gravamen of an abuse of process is the perversion of the particular legal process for a purpose of benefit to the defendant, which is not an authorized goal of the procedure." <u>Shiner</u>, 706 A.2d at 1236. In order to prevail on such a claim, a plaintiff must be able to prove "some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process ...; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." <u>Id</u>. (quoting <u>Di Sante v. Russ Financial Co.</u>, 380 A.2d 439, 441 (Pa. Super. 1977)); <u>Hart v. O'Malley</u>, 647 A.2d 542, 552 (Pa. Super. 1994) (collecting cases in support).

Plaintiff cannot satisfy the elements of any of these torts. He cannot establish that a defendant initiated a criminal prosecution against him. He cannot establish that any proceeding terminated in his favor. He cannot establish that a defendant initiated a civil proceeding against him. Nor can he establish that the underlying proceedings were used in an effort to obtain something that was not the legitimate object of the process.

Plaintiff can show nothing more than the proposition that Judge Wecht implemented orders with the intent of carrying out the domestic support laws of Pennsylvania and entered orders in furtherance of the orderly administration of justice. The other defendants merely carried out Judge Wecht's orders. Accordingly, plaintiff's allegations fail to state a claim even under the more relaxed standards governing an abuse of process claim arising in the civil context and thus he cannot advance a claim for malicious prosecution, malicious abuse of civil process or abuse of process.

At Count 8 plaintiff alleges Assault and Battery. Plaintiff claims that certain Allegheny County Correction Officers are responsible for "intentionally, harmfully, and offensively"

touching him with "strong arm tactics by forcefully inserting a pen into the hand of Addlespurger and grabbing and pushing Addlespurger to a Criminal bond Document to be signed and under duress the document was signed." (sic) Am. Compl. at ¶ 325.

More specifically, plaintiff claims that the Allegheny County Corrections Officers forced him to sign bond papers without his assent and therefore "intentionally, harmfully, and offensively" touched him. Plaintiff does not identify the Allegheny County Correction Officers in any of his submissions. He does allege that "all Defendants acted individually and in concert to impose cruel and unusual punishment upon Addlespurger for challenging the family law 'shadow justice' system." Am. Compl. at ¶ 332.

Plaintiff names Warden Rustin, claiming he is liable under the doctrine of *respondeat superior*. It is clear, however, that § 1983 liability cannot be based on *respondeat superior* liability. Rather, "plaintiffs 'instead must show that [the defendant] played a personal role in violating their rights.'" Bayer v. Monroe County Children and Youth Services, 577 F.3d 186, 191 (3d Cir. 2009) (citing Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir.1990)). Based on plaintiff's own allegations it is clear that defendant Rustin did not take affirmative action in procuring plaintiff's signature. Therefore, this count must be dismissed.[5]

At Count 9 plaintiff asserts a claim against defendants for Intentional Infliction of Emotional Distress ("IIED"). The gravamen of the tort of IIED is that the underlying conduct must be of an "extreme or outrageous type." Rinehimer v. Luzerne County Community College, 539 A.2d 1298, 1305 (Pa. Super. 1988).

---

[5] Plaintiff's assertion that his signing of bond papers in order to obtain release was coerced and brought about under physical threat or force is incredible. Assuming the accuracy of this assertion, plaintiff apparently preferred to remain incarcerated under circumstances that he believed were unlawful and unjust rather than to sign a paper voluntarily that would lead to his immediate release. Such fanciful allegations provide insufficient grounds for maintaining a lawsuit. See Neitzke v. Williams, 490 U.S. 319, 327 (1989) (identifying two types of legally frivolous complaints: (1) those based upon indisputably meritless legal theory, and (2) those with factual contentions which clearly are baseless and thus fanciful.).

As a preliminary matter, it is for the court to determine if the defendant's conduct is sufficiently extreme to permit recovery. Krushinski v. Roadway Express, 627 F. Supp. 934, 938 (M.D. Pa. 1985) (citing Restatement (Second) of Torts § 46 comment h). Pennsylvania courts have been chary to declare conduct "outrageous" and have permitted recovery "only in limited circumstances where the conduct has been clearly outrageous." Id. It has been said that "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Buczek v. First National Bank of Mifflintown, 531 A.2d 1122, 1125. (Pa. Super. 1987).

Plaintiff claims that defendants Wecht and Quinn are responsible for intentionally inflicting emotional distress during his state court case by entering or using electronic court documents and signatures. Plaintiff also names Rustin and the former Clerk of Court. There is nothing extreme or outrageous about the use of electronic court records and signatures. Furthermore, as aforementioned, these defendants enjoy absolute judicial immunity or quasi-judicial immunity for all actions taken as part of the official functions of the Court of Common Pleas.

Additionally, plaintiff asserts that Allegheny County and the Commonwealth of Pennsylvania are liable at Count 9 under the doctrine of *respondeat superior*. Of course, having failed to plead a viable claim against the individual defendants it follows that plaintiff cannot provide any factual support for a claim of *respondeat superior* liability. Nor is there any basis in the pleadings to infer that these government entities were the moving force behind a violation of plaintiff's constitutional rights. Thus, the claim against them is devoid of factual foundation and must be dismissed.

For the above reasons, all claims in the Amended Complaint as liberally construed and augmented by all of plaintiff's submissions must be dismissed as to all defendants. An appropriate order will follow.

Date: August 1, 2011

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:   Steven Addlespurger
      1391 Noblestown Road
      Oakdale, PA 15071

      (*Via First Class Mail*)

      Michael P. Daley, Esquire
      Scott A. Bradley, Esquire
      Craig E. Maravich, Esquire
      Michael H. Wojcik, Esquire
      Lisa G. Michel, Esquire

      (*Via CM/ECF Electronic Mail*)